## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIAN  D. NEEFE, individually and as next of friend to Lacey Knudson, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 04-366-KAJ |
| RODNEY LAYFIELD and DELAWARE STATE POLICE, | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

W. Michael Tupman
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641

Attorney for Defendants

Date: August 22, 2005

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   The Eleventh Amendment Bars Any
        Claim For Monetary Damages Against
        The State Police Or Layfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   Neefe Cannot Sue The State Police Or Layfield
        For Monetary Damages Under Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.   Layfield Had Probable
        Cause To Arrest Neefe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.   Delaware Law Authorized The Arrest
               Of Neefe For Motor Vehicle Violations
               Committed In Layfield's Presence . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.   Layfield Lawfully Searched
               Neefe And His Car Incident
               To A Custodial Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.   It Is Constitutionally Irrelevant
               That Layfield Suspected Neefe
               Of Drug Trafficking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.   Layfield Is Entitled To Qualified
        Immunity From Suit Because He Did
        Not Violate Neefe's Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

UNREPORTED CASES – ATTACHED

<u>Green v. Howard R. Young Correctional Institution</u>,
     229 F.R.D. 99, 2005 WL 1539202 (D. Del., June 24, 2005) (Jordan, J.)


<u>United States v. Ayers</u>,
     Crim. No. 02-112-SLR (D. Del.), 2003 WL 292086 (Feb. 6, 2002) (Robinson, J.)

<u>Doe v. Roe</u>,
     907 F.3d 1137, 1990 WL 86285 (4th Cir., June 13, 1990)

## TABLE OF CITATIONS

**CASES**                                                                    **Page No.**

Barna v. City of Perth Amboy,
    42 F.3d 809 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bell v. United States,
    254 F.2d 82 (D.C. Cir.), cert. denied, 358 U.S. 885 (1958) . . . . . . . . . . . . . . . . . . . . . 14

Blanciak v. Allegheny Ludlum Corp.,
    77 F.3d 690 (3rd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

City of Canton v. Harris,
    489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Doe v. Roe,
    907 F.2d 1137, 1990 WL 86285 (4th Cir., June 4, 1990) . . . . . . . . . . . . . . . . . . . . . . . 9

Edwards v. City of Philadelphia,
    860 F.2d 568 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Green v. Howard R. Young Correctional Institution,
    229 F.R.D. 99, 2005 WL 1539202 (D. Del., June 24, 2005) (Jordan, J.) . . . . . . . . . . . . 7

Hunter v. Bryant,
    502 U.S. 224 (1991) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jamison v. Delaware,
    340 F. Supp.2d 514 (D. Del. 2004) (Robinson, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Linn v. Garcia,
    531 F.2d 855 (8th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mitchell v. Forsyth,
    472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

New York v. Belton,
    453 U.S. 454 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pennhurst State School & Hospital v. Halderman,
    465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

<u>Page No.</u>

<u>Pennsylvania v. Mimms,</u>
    434 U.S. 106 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Rawlings v. Kentucky,</u>
    448 U.S. 98 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Saucier v. Katz,</u>
    533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Scott v. Michigan,</u>
    173 F. Supp.2d 708 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Traylor v. State,</u>
    458 A.2d 1170 (Del. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>United States v. Atkinson,</u>
    450 F.2d 835 (5th Cir. 1971), <u>cert. denied,</u> 406 U.S. 923 (1972) . . . . . . . . . . . . . . . . . . 15

<u>United States v. Ayers,</u>
    2003 WL 292086 (D. Del., Feb. 6, 2003) (Robinson, J.) . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>United States v. Bookhardt,</u>
    277 F.3d 558 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

<u>United States v. Dhinsa,</u>
    171 F.3d 721 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

<u>United States v. Joyner,</u>
    492 F.2d 655 (D.C. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>United States v. Moorefield,</u>
    111 F.3d 10 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>United States v. Robinson,</u>
    414 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 13

<u>United States v. Saunders,</u>
    476 F.2d 5 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

<u>United States v. Scopo,</u>
    19 F.3d 777 (2nd Cir.), <u>cert. denied,</u> 513 U.S. 877 (1994) . . . . . . . . . . . . . . . . . . . . 13-14

iv

**Page No.**

United States v. Thompson,
292 F. Supp. 757 (D. Del. 1968) (Latchum, J.),
aff'd, 420 F.2d 536 (3rd Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Whren v. United States,
517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Will v. Michigan Department of State Police,
491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

## **STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8-9

21 Delaware Code § 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21 Delaware Code § 2115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 Delaware Code § 2701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 Delaware Code § 2708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21 Delaware Code § 4122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21 Delaware Code § 4176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On June 16, 2004, plaintiff Brian D. Neefe ("Neefe") sued "Gary" Layfield and the Delaware State Police. [1]  The complaint alleges that on the night of January 23, 2004 Layfield stopped Neefe while he was driving on Route One north of Rehoboth Beach without reasonable suspicion.  The complaint alleges that Layfield then arrested Neefe without probable cause and searched him and his car in violation of Neefe's rights under the Fourth Amendment of the U.S. Constitution. The complaint also alleges a pendent state law claim for unlawful imprisonment.

On May 18, 2005, this Court entered a Rule 16 Scheduling Order.  The Order calls for the filing of dispositive motions by August 22, 2005.  The Order schedules a three-day jury trial November 29 – December 1, 2005.  In compliance with this Court's Scheduling Order, the parties have a mediation scheduled with Magistrate-Judge Thynge on September 19, 2005.

On August 22, 2005, the defendants filed a motion for summary judgment in their favor as a matter of law.  This is the defendants' Opening Brief in support of their motion for summary judgment.

---

[1]    On July 8, 2005, Neefe amended his complaint to correct the name of the individual defendant (Rodney, not Gary, Layfield).

1

## SUMMARY OF ARGUMENT

1.      The Eleventh Amendment bars Neefe's federal claim for monetary damages against the Division of State Police and Sergeant Rodney Layfield in his official capacity.  The Eleventh Amendment also bars Neefe's pendent state law claim for alleged unlawful imprisonment.

2.      Neefe cannot sue the State Police or Layfield in his official capacity under 42 U.S.C. §1983 for monetary damages  because they are not "persons" acting under color of state law for purposes of Section 1983.  Under Section 1983, Neefe can only sue Layfield in his individual capacity for monetary damages because Neefe has not asked for any prospective injunctive relief.

3.      Layfield had probable cause to arrest Neefe for violations of the Delaware motor vehicle code committed in Layfield's presence.  After making the traffic stop, Layfield asked Neefe to exit his car and then searched Neefe and the passenger interior of his car incident to a lawful custodial arrest.

4.      Layfield is entitled to qualified immunity from suit.  Even assuming the truth of Neefe's allegations, Layfield did not violate Neefe's constitutional rights.

2

## STATEMENT OF FACTS

The material facts are based on the sworn affidavit of Sergeant Rodney Layfield ("Layfield Aff.").

On January 23, 2004, a confidential informant ("Eddie") contacted Trooper First Class Lance Skinner, a member of the Governor's Task Force (GTF) in Sussex County. Layfield Aff. ¶ 6. Eddie had proven a reliable confidential informant in the past by providing information to the GTF which resulted in an arrest for illegal drugs and weapons. Id. ¶ 5.

Eddie told TFC Skinner that he could buy prescription drugs from a dealer named "Brian" and that Eddie had bought drugs from Brian in the past. Id. ¶ 6. Eddie told Skinner that Brian drove an older model maroon Oldsmobile passenger vehicle displaying Pennsylvania registration DWH-4958. Id. Eddie told Skinner that he had called Brian earlier in the day to see if he could buy prescription drugs. Id. Brian told Eddie he would sell him eighteen 5ml valium pills for $50.00 and two white morphine pills for $30.00 each. Id.

Later that day on January 23, 2004, the GTF unit met at Troop 4 to de-brief about current events. Layfield Aff. ¶ 7. TFC Skinner shared with the members of the unit the information he learned from Eddie about Brian's selling prescription drugs. Id. The unit decided to investigate the matter further because the selling of prescription drugs has become a serious problem in Sussex County. Id.

In the early evening of January 23, 2004, TFC Skinner and a probation officer picked up Eddie and drove to Rehoboth Beach where Eddie pointed out the maroon Oldsmobile which was parked in front of the building where Eddie said Brian lived with his girlfriend and daughter. Id. Skinner conducted an NCIC check on the maroon Oldsmobile which was registered to Brian Neefe,

a Pennsylvania resident.  Layfield Aff. ¶ 8.

Eddie called Neefe on a telephone from Skinner's car and arranged to meet Neefe at the Jiffy Lube on Route One north of Midway to buy the drugs.  Id. ¶ 9.

Layfield was in an unmarked car just outside of Rehoboth and in constant radio communication with TFC Skinner, who relayed all of the information he was gathering about the drug buy.  Id. ¶ 10.  Skinner informed Layfield when the suspect left his apartment building just after the call from Eddie to buy drugs.  Id.  Eddie made positively identified the man leaving the building as Brian.  Id.  Skinner described to Layfield Neefe's physical appearance and the model and color of his car.  Id.  Skinner told Layfield that Neefe placed an infant in a child seat in the rear seat of the car.  Id.  Skinner told Layfield that Neefe had put an orange plastic bucket in the front passenger seat of the car.  Id.

A few minutes later, Layfield observed Neefe's car leaving Rehoboth.  Layfield Aff. ¶ 11. Layfield started to follow Neefe's car as he drove north on Route One in the right-hand lane.  Id. Layfield saw Neefe's car cross the "fog line" on the right shoulder of Route One three times over the course of 3/4 of a mile.  Id.  Each time, Layfield saw Neefe's car swerve 2-3 feet into the shoulder. Id.  Layfield saw Neefe turning around look at the infant in the rear car seat causing him to take his eyes off the road and cross the fog line into the shoulder.  Id.

Layfield was concerned that Neefe might be under the influence of drugs because he knew from the confidential informant that Neefe had prescriptions for valium and morphine.  Layfield Aff. ¶ 13.  Layfield was concerned about the safety of the infant in the back seat due to Neefe's erratic driving, so Layfield activated his emergency lights to make a traffic stop for Neefe's failure to stay in lane and careless/inattentive driving.  Id.  Neefe turned right off of Route One into a parking lot

4

near the Roadhouse restaurant.  Layfield Aff. ¶ 13.  Layfield pulled his vehicle right behind Neefe.

<u>Id.</u>

Layfield approached the driver's side of the vehicle and Neefe rolled his window down.

Layfield Aff. ¶ 14.  Neefe appeared very nervous and had difficulty producing his driver's license,

registration, and proof of insurance.  <u>Id.</u>  On the front passenger seat of the car was an orange, five-

gallon paint bucket.  <u>Id.</u>  Layfield asked Neefe what was in the bucket, and Neefe took the top off

and showed Layfield.  <u>Id.</u>  Inside the bucket, Layfield saw hypodermic needles and many small

plastic bottles for prescription drugs.  <u>Id.</u>

Layfield then asked Neefe to exit his car.  Layfield Aff. ¶ 15.  Layfield searched Neefe but

did not find any drugs or weapons.  <u>Id.</u>  Layfield then told Neefe that he was under arrest, hand-

cuffed him, and placed him in the rear seat of Layfield's vehicle.  <u>Id.</u>

Layfield then searched the passenger interior of Neefe's car, under the front seats and in the

rear seat area of the car.  Layfield did not search the car seat or the infant sitting in the car seat.

Layfield Aff. ¶ 17.  Layfield did not search the trunk.  <u>Id.</u>  Other than the orange bucket filled with

prescription drugs (all made out to Neefe), Layfield did not find any other drugs in the car.  <u>Id.</u>

Neefe told Layfield shortly after the traffic stop that his girlfriend worked at the Roadhouse

restaurant.  Layfield Aff. ¶ 18.  One of the other Troopers at the scene (Corporal McColgan) went

inside to inform her about the situation so she could take custody of the infant child and Neefe's car,

which she did.  <u>Id.</u>

Layfield then drove Neefe to Troop 7 for processing.  Layfield Aff. ¶ 19.  Neefe was at Troop

7 for approximately 45 minutes.  <u>Id.</u>  During that time, Layfield consulted with his supervisor

(Sergeant Colby Cox) and other members of the GTF unit.  <u>Id.</u>  They believed  that in order to

5

prosecute Neefe it might be necessary to disclose the identity of the confidential informant.  Layfield

Aff. ¶ 19.   Rather than risk losing a reliable confidential informant,  they decided not to pursue

prosecution.  <u>Id.</u>  Neefe's girlfriend came to Troop 7 and drove him home.

<u>Id.</u>

6

**ARGUMENT**

A.    The Eleventh Amendment Bars Any
       Claim For Monetary Damages Against
       State Police Or Layfield.

"'[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" Green v. Howard R. Young Correctional Institution, 229 F.R.D. 99, 2005 WL 1539202, at p.3 (D. Del., June 24, 2005) (Jordan, J.) (quoting Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3rd Cir. 1996) (citing Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98-100 (1984)). [2]

"A state may consent to a waiver of its sovereign immunity, or the United States Congress can waive a state's sovereign immunity, if there is a valid use of Congress's enforcement powers under the Fourteenth Amendment." Green, 2005 WL 1539202, at p.3. "'In determining whether Congress has abrogated a state's Eleventh Amendment Immunity, a simple but stringent test is applied. This two-prong test requires that: (1) Congress unequivocally express its intent to abrogate; and (2) Congress act according to a valid exercise of power in abrogating state immunity.'" Id. (quoting Jamison v. Delaware, 340 F. Supp.2d 514, 516 (D. Del. 2004) (Robinson, J.)).

For purposes of this case, "the State of Delaware has not waived its sovereign immunity under the Eleventh Amendment." Green, 2005 WL 1539202, at p.3. Nor has Congress "waived Delaware's immunity" for any of Neefe's claims. Id. Neefe's claims for monetary relief against the Division of State Police and Layfield in his official capacity as a Delaware State Trooper must be

---

[2]    A copy of this Court's unreported decision in Green is attached to the hard-copy of this brief filed with the Clerk of the Court.

dismissed because they are barred by the Eleventh Amendment.[3]  This includes both Neefe's federal constitutional claim for alleged violation of his Fourth Amendment rights and his pendent state law claim for alleged unlawful imprisonment.  The Eleventh Amendment's "constitutional bar applies to pendent claims as well."  Pennhurst, 465 U.S. at 120.

       B.      Neefe Cannot Sue The State Police
                 Or Layfield For Monetary Damages
                 Under Section 1983.

Neefe bases his federal Fourth Amendment claim on 42 U.S.C. §1983.  Section 1983 authorizes suit against "any person who, under color of any law . . . of any State, shall subject . . . any person . . . to the deprivation of any rights . . . secured by the Constitution of the United States."

"[N]either a State nor its officials acting in their official capacities are 'persons' under Section 1983."  Will v. Michigan Department of State Police, 491 U.S. 58, 70 (1989).  Neefe's Section 1983 claims for monetary damages against the Division of State Police and Sergeant Layfield in his official capacity  must be dismissed for lack of subject matter jurisdiction.

Neefe alleges in his complaint that the State Police "failed to properly train and supervise [Layfield] as to the necessity of reasonable suspicion to stop a vehicle and probable cause for arresting an individual."  Neefe confuses the liability a municipality may have under Section 1983

---

[3]      The Eleventh Amendment does not bar claims against State officials in their official capacity where the plaintiff seeks prospective injunctive relief (as opposed to monetary damages).  See Pennhurst, 465 U.S. at 102-03.  Neefe does not seek any prospective injunctive relief against Layfield in his official capacity.

"if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." <u>City of Canton v. Harris</u>, 489 U.S. 378, 387 (1989).  A municipality does not have Eleventh Amendment immunity.  The Eleventh Amendment bars "a *City of Canton*-type action against *state* officials." <u>Doe v. Roe</u>, 907 F.2d 1137, 1990 WL 86285 (4th Cir., June 4, 1990) (citing <u>Will v. Department of Michigan State Police</u>, <u>supra</u>). [4]  <u>Accord</u> <u>Scott v. Michigan</u>, 173 F. Supp.2d 708 (E.D. Mich. 2001) (department of state police "is not a municipality and thus theories of municipal  liability discussed in <u>City of Canton v. Harris</u> . . . i.e., failure to train or supervise, have no application here").

        C.      <u>Layfield Had Probable</u>
                  <u>Cause To Arrest Neefe.</u>

          1.      <u>Delaware Law Authorized The Arrest</u>
                  <u>Of Neefe For Motor Vehicle Violations</u>
                  <u>Committed In Layfield's Presence.</u>

While following Neefe northbound on Route 1, Layfield saw Neefe's car leave the right-hand lane three times and cross the "fog line" onto the shoulder over the course of 3/4 of a mile.  Layfield Aff. ¶ 12.  Layfield saw Neefe turning around to look in the rear seat, and when Neefe did so he took his eyes off the road causing the car to swerve onto the shoulder.  <u>Id.</u>  Layfield knew that Neefe had an infant in the rear of the car and was concerned for the infant's safety due to Neefe's erratic driving.  <u>Id.</u>  Layfield was also concerned that Neefe might be driving under the influence of drugs. <u>Id.</u>

---

      [4]      A copy of the unreported decision in <u>Doe v. Roe</u> is attached to the hard-copy of this brief filed with the Clerk of the Court.

Layfield activated his emergency lights to make a traffic stop for Neefe's failure to stay in lane and careless/inattentive driving. Layfield Aff. ¶ 13. Neefe turned right into the parking lot of the Roadhouse restaurant at Midway. Id. Layfield pulled in behind Neefe to make the traffic stop. Id.

The Delaware Motor Vehicle Code provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 21 Del. C. § 4122(a)(1). The Motor Vehicle Code also makes careless or inattentive driving a traffic violation. Id. § 4176.

"In the absence of a controlling federal statute, the nature of an arrest is determined by the law of the state where the 'seizure' took place." United States v. Thompson, 292 F. Supp. 757, 760-61 (D. Del. 1968) (Latchum, J.), aff'd, 420 F.2d 536 (3rd Cir. 1970). The Delaware Motor Vehicle Code authorizes the State Police "to arrest a person without a warrant" for "violations of this title committed in their presence." 21 Del. C. § 701(a)(1).

"It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." United States v. Moorefield, 111 F.3d 10, 12 (3rd Cir. 1997). In Thompson, Wilmington police officers followed the defendant's car and saw him drive the wrong way down a one-way street. He also had a defective muffler and several holes in the windshield stuffed with paper. The officers stopped the car and when it turned out the driver had a learner's permit, they arrested him for driving in violation of his learner's permit (21 Del. C. § 2708). This Court held the arrest was lawful because when the police "signaled to defendant to stop, they had actually observed three infractions of the Delaware Motor Vehicle law,

10

any one of which would constitute probable cause to stop defendant." 292 F. Supp. at 762, aff'd, 420 F.2d 536, 540 (3rd Cir. 1970) ("the officers had the authority to make the arrest for violation of the Motor Vehicle Code of Delaware. 21 Del.C. § 701(a)."). Accord  United States v. Ayers, 2003 WL 292086, at p.5 (D. Del., Feb. 6, 2003) (Robinson, J.) ("the police officers had probable cause to stop defendant's vehicle based on the display of an illegal license plate [21 Del. C. § 2115] as well as for suspicion of driving with a suspended license [21 Del. C. § 2701] contrary to two Delaware statutes").  [5]

Delaware law authorizes a police officer "to make a custodial arrest for any violation of the motor vehicle code." Traylor v. State, 458 A.2d 1170, 1174 (Del. 1983) (driving with suspended license).  Layfield had probable cause to believe that Neefe violated the motor vehicle code based on Layfield's personal observations of Neefe's erratic driving.  Layfield made a lawful custodial arrest of Neefe for those traffic violations.

   2.    Layfield  Lawfully Searched
          Neefe And His Car Incident
          To A Custodial Arrest.

"[A] police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle." Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977).

In United States v. Robinson, 414 U.S. 218 (1973), a police officer had probable cause to stop the defendant for a motor vehicle violation and made a custodial arrest.  The officer then searched the defendant and found drugs.  The Supreme Court held "that a search incident to a lawful arrest is a traditional exception of the warrant requirement of the Fourth Amendment." 414 U.S. at

---

[5]    A copy of the unreported decision in Ayers is attached to the hard-copy of this brief filed with the Clerk of the Court.

224.  "[A] search may be made of the person of the arrestee by virtue of the lawful arrest."  Id.  "The justification or reasons for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial."  Id. at 234.

In New York v. Belton, 453 U.S. 454 (1981), a state trooper stopped a motorist for speeding and then searched the passenger compartment of the car and found drugs.  The Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  453 U.S. at 460 (footnotes omitted).

It does not make any difference whether a police officer conducts the search just before or after the formal arrest.  "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."  Rawlings v. Kentucky, 448 U.S. 98, 110 (1980).

Layfield lawfully stopped Neefe for violations of the Delaware motor vehicle code committed in Layfield's presence.  Layfield then directed Neefe to get out of his car so Layfield could search him incident to a custodial arrest.  Layfield placed Neefe under arrest, hand-cuffed him, and placed Neefe in the back of Layfield's vehicle.  Layfield then conducted a lawful search of the interior of Neefe's car incident to a custodial arrest.  Layfield searched Neefe and his car quickly on the heels of the challenged stop.  Consistent with the Supreme Court's decisions in Mimms, Robinson, Belton, and Rawlings, supra, Layfield conducted a lawful search of Neefe and the interior of his car incident to a lawful custodial arrest.

3.    It Is Constitutionally Irrelevant
That Layfield Suspected Neefe
Of Drug Trafficking.

In <u>Whren v. United States</u>, 517 U.S. 806 (1996), police officers patrolling a high drug area

stopped the defendant's vehicle for careless driving and failure to use a turn signal in violation of

the city traffic code.  The Supreme Court held that "a traffic-violation arrest (of the sort here) would

not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search' . . . and that a

lawful post-arrest search of the person would not be rendered invalid by the fact that it was not

motivated by the officer-safety concern that justifies such searches."  517 U.S. at 813 (quoting

<u>United States v. Robinson</u>, 414 U.S. 218, 221 n.1, 236 (1973)).  "[T]he constitutional reasonableness

of traffic stops" does not depend "on the actual motivations of the individual officers involved."

<u>Whren</u>, 517 U.S. at 813.

It is does not make any difference that Layfield arrested Neefe for a drug violation and not

for violating the Delaware motor vehicle code.  "A fair reading of <u>Whren</u> and other car stop cases

leads to the conclusion that an observed traffic violation legitimates a stop even if the detectives do

not rely on the traffic violation."   <u>United States v. Dhinsa</u>, 171 F.3d 721, 725 (2nd Cir. 1998).

"'[W]here the arresting officer had probable cause to believe that a traffic violation occurred or was

occurring in the officer's presence and was authorized by [state] law to effect a custodial arrest  for

the particular offense, the resulting arrest will not violate the fourth amendment.'" <u>Dhinsa</u>, 171 F.3d

at 725 n.2 (quoting <u>Scopo v. United States</u>, 19 F.3d 777, 784 (2nd Cir.), <u>cert.</u> <u>denied</u>, 513 U.S. 877

(1994)).

In <u>Scopo</u>, members of a special FBI task force were following suspected organized crime

members when they saw the car change lanes without signalling in violation of the New York State

13

3.    It Is Constitutionally Irrelevant
That Layfield Suspected Neefe
Of Drug Trafficking.

In <u>Whren v. United States</u>, 517 U.S. 806 (1996), police officers patrolling a high drug area

stopped the defendant's vehicle for careless driving and failure to use a turn signal in violation of

the city traffic code.  The Supreme Court held that "a traffic-violation arrest (of the sort here) would

not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search' . . . and that a

lawful post-arrest search of the person would not be rendered invalid by the fact that it was not

motivated by the officer-safety concern that justifies such searches."  517 U.S. at 813 (quoting

<u>United States v. Robinson</u>, 414 U.S. 218, 221 n.1, 236 (1973)).  "[T]he constitutional reasonableness

of traffic stops" does not depend "on the actual motivations of the individual officers involved."

<u>Whren</u>, 517 U.S. at 813.

It is does not make any difference that Layfield arrested Neefe for a drug violation and not

for violating the Delaware motor vehicle code.  "A fair reading of <u>Whren</u> and other car stop cases

leads to the conclusion that an observed traffic violation legitimates a stop even if the detectives do

not rely on the traffic violation."   <u>United States v. Dhinsa</u>, 171 F.3d 721, 725 (2nd Cir. 1998).

"'[W]here the arresting officer had probable cause to believe that a traffic violation occurred or was

occurring in the officer's presence and was authorized by [state] law to effect a custodial arrest  for

the particular offense, the resulting arrest will not violate the fourth amendment.'" <u>Dhinsa</u>, 171 F.3d

at 725 n.2 (quoting <u>Scopo v. United States</u>, 19 F.3d 777, 784 (2nd Cir.), <u>cert.</u> <u>denied</u>, 513 U.S. 877

(1994)).

In <u>Scopo</u>, members of a special FBI task force were following suspected organized crime

members when they saw the car change lanes without signalling in violation of the New York State

13

traffic code.  The officers stopped the car for the traffic violation and arrested the occupants.  A search of the car turned up illegal weapons.  The Second Circuit held that the traffic stop was "based upon a specific and articulable fact: the observed traffic violation."  19 F.3d at 781.  Although the violation was minor, "the officers are within their authority in stopping Scopo for violation of the state law."  Id.  "The fact that the police chose to wait until Scopo stopped at an intersection to arrest him, or that traffic arrests were not necessarily part of their usual duties as a unit created to monitor organized crime activities, does not negate the fact that they directly observed Scopo violating the traffic laws and thus had probable cause to arrest him."  Id. at 782.

In United States v. Bookhardt, 277 F.3d 558 (D.C. Cir. 2002), a police officer observed a motorist drive onto the shoulder of the road, and then continue at a high rate of speed cutting  in and out of traffic without using his turn signal.  The officer stopped the driver and arrested him for an expired license.  Incident to the arrest, the officer searched the car and found two guns.  The D.C. Circuit held that "'an arrest will be upheld for an offense that is not denominated as the reason for the arrest by the arresting officer.'" 277 F.3d at 564 (quoting United States v. Joyner, 492 F.2d 655, 656 (D.C. Cir. 1974)).  "'The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a [crime] had been committed and that the [defendants] had committed it.'" Bookhardt, 277 F.3d at 564 (quoting Bell v. United States, 254 F.2d 82, 86 (D.C. Cir..), cert. denied, 358 U.S. 885 (1958)).

As long as the officer "had an objectively valid ground to arrest Bookhardt, the fact that he articulated an invalid one does not render the arrest unlawful."  Bookhardt, 277 F.3d at 566 (citing Dhinsa, supra).

Indeed, were we to hold otherwise, we would do no

> more than create an incentive for the police 'to routinely
> charge every citizen with every offense' they can think
> of 'in order to increase the chances that at least one
> charge would survive' – yielding no additional protection
> of civil liberties while adding considerably to the burden
> placed upon both defendants and police.

Bookhardt, 277 F.3d at 566 (quoting United States v. Atkinson, 450 F.2d 835, 838 (5th Cir. 1971)),

cert. denied, 406 U.S. 923 (1972)).

"Other circuits have similarly concluded that, even if probable cause does not support arrest

for the offense charged by the arresting officer, an arrest (and search incident thereto) is nonetheless

valid if the same officer had probable cause to arrest the defendant for another offense." Bookhardt,

277 F.3d at 565. See Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3rd Cir. 1994) ("[p]robable

cause need only exist as to any offense that could be charged under the circumstances"). "'[W]hen

a peace officer has probable cause to believe that a person is committing . . . [an] offense, he is

justified in arresting that person, and it is immaterial that the officer may have thought, without

probable cause, that the defendant was committing or had committed other offenses as well.'"

Edwards v. City of Philadelphia, 860 F.2d 569, 576 (3rd Cir. 1988) (quoting Linn v. Garcia, 531 F.2d

855, 862 (8th Cir. 1976)).

It is constitutionally irrelevant for purposes of the Fourth Amendment that: (1) Layfield may

have believed he had probable cause to arrest Neefe for a drug violation; or (2) the police report

charged Neefe with a drug violation (and not a motor vehicle violation). "When an officer makes

an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his

subjective reliance on an offense for which no probable cause exists nor his verbal announcement

of the wrong offense vitiates the arrest." United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973).

D.     Layfield Is Entitled To Qualified
       Immunity From Suit Because He Did
       Not Violate Neefe's Constitutional Rights.

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "'[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Saucier, 533 U.S. at 200 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

"A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

Layfield made a lawful custodial arrest of Neefe for violations of the state motor vehicle code committed in his presence.  Consistent with the Fourth Amendment, Layfield then lawfully searched Neefe and the interior of his vehicle.  Because "no constitutional right would have been violated were [Neefe's] allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

## **CONCLUSION**

For the foregoing reasons, this Court should grant defendants' motion for summary judgment as a matter of law and dismiss plaintiff's complaint with prejudice.

Respectfully submitted,

/s/ W. Michael Tupman
W. Michael Tupman
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641

Attorney for Defendants

Dated: August 22, 2005

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 22, 2005, I served electronically a copy of the Defendants' Opening

Brief in Support of Their Motion for Summary Judgment, and caused to be served by first-class mail,

postage prepaid, two copies of that Opening Brief to:


Edward C. Gill, Esquire
16 N. Bedford Street
P.O. Box 824
Georgetown, DE 19947
Counsel of Record for Plaintiff




/s/ W. Michael Tupman
W. Michael Tupman

I:\TUPMAN\FILES\neefe.opening.brief2.wpd