**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

BRIAN D. NEEFE, individually and as next of friend to Lacey Knudson,

Plaintiff,

vs.

RODNEY LAYFIELD and DELAWARE STATE POLICE,

Defendants.

Civil Action No. 04-366-KAJ

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

W. Michael Tupman
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641

Attorney for Defendants

Date: September 30, 2005

# TABLE OF CONTENTS

**Page No.**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

A. The Eleventh Amendment Bars Any Claim For Monetary Damages Against The State Police Or Layfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B. Neefe Cannot Sue The State Police Or Layfield For Monetary Damages Under Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

C. Layfield Had Probable Cause To Arrest Neefe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D. Layfield Is Entitled To Qualified Immunity From Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

UNREPORTED CASES – ATTACHED

United States v. Richardson,
40 Fed.Appx. 7 (6th Cir., Feb. 21, 2002)

## TABLE OF CITATIONS

**CASES** **Page No.**

Hunter v. Bryant,
502 U.S. 224 (1991) (per curiam) . . . . . . . . . . 7

Illinois v. Gates,
462 U.S. 213 (1983) . . . . . . . . . . 5, 6

Mitchell v. Forsyth,
472 U.S. 511 (1985) . . . . . . . . . . 7

Saucier v. Katz,
533 U.S. 194 (2001) . . . . . . . . . . 7, 8

United States v. Belle,
593 F.2d 487 (3rd Cir. 1979) . . . . . . . . . . 6

United States v. Richardson,
40 Fed.Appx. 7 (6th Cir., Feb. 21, 2002) . . . . . . . . . . 4, 5, 6

United States v. Strickland,
144 F.3d 412 (6th Cir. 1998) . . . . . . . . . . 5-6

**STATUTES**

42 U.S.C. §1983 . . . . . . . . . . 1

## ARGUMENT

A. The Eleventh Amendment Bars Any Claim For Monetary Damages Against The State Police Or Layfield.

In his answering brief (at p.8), Neefe "concede[s] that the Eleventh Amendment bars any claims for monetary damages against the Delaware State Police and defendant Layfield in his official capacity."

B. Neefe Cannot Sue The State Police Or Layfield For Monetary Damages Under Section 1983.

In his answering brief (at p.9), Neefe "concedes that his 42 U.S. Code Section 1983 claim against the State Police and defendant Layfield in an official capacity should be dismissed."

C. Layfield Had Probable Cause To Arrest Neefe.

While following Neefe northbound on Route 1, Layfield saw Neefe's car leave the right-hand lane three times and cross the "fog line" onto the shoulder over the course of 3/4 of a mile. Layfield Aff. ¶12. Layfield saw Neefe turning around to look in the rear seat, and when Neefe did so he took his eyes off the road causing the car to swerve onto the shoulder. Id. Layfield knew that Neefe had an infant in the rear of the car and was concerned for the infant's safety due to Neefe's erratic driving. Id. Layfield activated his emergency lights to make a traffic stop for Neefe's failure to stay in lane and careless/inattentive driving. Id. ¶13.

In his affidavit, Neefe denies that he committed a traffic violation. "I did not violate any

motor vehicle laws. Specifically, I did not leave my lane of travel and go over the fog line and travel on the shoulder of the roadway." Neefe Aff. ¶3.

This is a genuine issue of material fact which precludes summary judgment on this issue. The undisputed material facts, however, show as a matter of law that Layfield had probable cause to arrest Neefe for a suspected drug violation.

The Governor's Task Force (GTF) relies on confidential informants in combatting illegal drug activity. Layfield Aff. ¶5. One confidential information (known as "Eddie") had proved reliable in the past by providing information that resulted in an arrest for illegal drugs and weapons. Id.

On January 23, 2004, Eddie contacted TFC Lance Skinner and told Skinner that he could buy prescription drugs from a man named Brian who resided on Rehoboth Avenue. Layfield Aff. ¶6. Eddie told Skinner that he had bought prescription drugs from Brian in the past. Id. Eddie also told Skinner that Brian drives an older model maroon Oldsmobile passenger vehicle displaying Pennsylvania registration DWH-4958. Id. Eddie told Skinner that he had contacted Brian earlier that day to see if he could buy prescription drugs. Id. Brian told Eddie that he could sell him eighteen 5 ml valium pills for $50.00 and two white morphine pills for $30.00 each. Id.

Later that day on January 23, 2004, the GTF unit met at Troop 4. Layfield Aff. ¶6. TFC Skinner shared with Layfield and the other members of the unit the information he had received from Eddie about Brian selling prescription drugs. Id.

In the early evening of January 23, 2004, TFC Skinner and a probation officer picked up Eddie and drove to Rehoboth Avenue, where Eddie pointed out the maroon Oldsmobile displaying Pennsylvania registration DWH-4958 which was parked across from the Post Office in front of the

building where Eddie said Brian resided. Layfield Aff. ¶6. Skinner conducted an NCIC check on the maroon Oldsmobile and it was registered to Brian Neefe, a resident of Pennsylvania. Id.

Eddie called Neefe on the telephone from Skinner's car (the call was tape-recorded and overheard by Skinner and a probation officer). Layfield Aff. ¶9. Eddie arranged on the telephone to meet with Neefe at the Jiffy Lube on Route One north of Midway to buy the drugs. Id. ¶9.

At the time, Layfield was in an unmarked patrol car just outside Rehoboth, but was in constant radio contact with TFC Skinner, who relayed to Layfield all of the information the other officers in the GTF unit were gathering about Neefe and the drug buy. Layfield Aff. ¶10. Skinner told Layfield when the suspect left his apartment building right after the call from Eddie to buy drugs. Id. Eddie positively identified the man leaving the building as Brian. Id. Skinner described Neefe's physical appearance and the model and color of his car to Layfield. Id. Skinner told Layfield that Neefe had put an orange plastic bucket in the front passenger seat of the car. Id.

A few minutes later, Layfield saw Neefe's car leaving Rehoboth traveling north in the direction of the Jiffy Lube. Layfield Aff. ¶11. Even if Neefe did not commit a traffic violation in Layfield's presence, Layfield still had probable cause to arrest Neefe at this point. [1]

---

[1] At the very least, Layfield had reasonable suspicion to make an investigative stop of Neefe at this point, which reasonable suspicion blossomed into probable cause when Neefe showed Layfield the contents of the orange plastic bucket in the front seat of his car which contained "a number of small plastic bottles that appeared to be for prescription drugs." Layfield Aff. ¶14.

In United States v. Richardson, 40 Fed.Appx. 7 (6th Cir., Feb. 21, 2002), [2] a confidential informant told the sheriff's narcotics unit that he had ordered two ounces of crack cocaine from a dealer named Richardson. The informant identified Richardson from photographs and identified a residence where the informant had seen Richardson. The informant had provided the sheriff's office with two prior accurate tips that lead to seizures of drugs.

Deputy sheriffs set up surveillance outside the residence. The informant notified the deputies after Richardson called him to arrange for the place for the drug buy, and Richardson left his residence shortly afterwards. The surveillance team intended to arrest Richardson while he was en route to deliver the drugs, but abandoned the plan after Richardson spotted one of the surveillance vehicles and started to walk away.

The Sixth Circuit held that there was probable cause to arrest Richardson.

> [T]he deputy sheriffs had information from a reliable confidential informant that on July 7, 2000, the informant had spoken to Richardson, and Richardson had agreed to sell him crack cocaine. Richardson, who was under surveillance for cocaine trafficking, departed his residence identified by the confidential informant nearly simultaneously with the informant's telephone call to the surveillance team that Richardson was departing the residence to deliver the cocaine ordered by the informant.

40 Fed.Appx. at pp. 12-13.

"These circumstances constitute probable cause to search Richardson because the informant's call would reasonably lead a prudent person to believe that Richardson possessed cocaine with intent

---

[2] A copy of that unreported decision is attached to the hard-copy of this Reply Brief filed with the Clerk of the Court.

to distribute, and that deputy sheriffs would find cocaine on Richardson's person." 40 Fed.Appx at p.14. While the police had used this confidential informant only twice before, "the additional corroborating circumstances of the informant's information identifying Richardson from a photograph spread and Richardson's location at the time of the drug deal, were reliable indicators of the informant's credibility." Id.

The court of appeals in Richardson relied on an earlier decision, United States v. Strickland, 144 F.3d 412 (6th Cir. 1998). In Strickland, a police informant telephoned a drug dealer in the presence of detectives, who heard the informant confirm a meeting at 7:30 p.m. at a convenience store to buy drugs. The detectives followed the informant to the parking lot of the convenience store, where he got into the suspect's car for a few moments and then returned to his own vehicle. Even though the police were not sure at that point whether the informant had bought any drugs, "the Fourth Amendment does not require that a police officer *know* a crime has occurred at the time the officer arrests or searches a suspect." 144 F.3d at 415.

> Indeed, we need only consider whether there are facts that, given the 'factual and practical considerations of everday life,'could lead a reasonable person to believe that an illegal act has occurred or is about to occur. As evidence pointing to a suspect's likely illegal behavior mounts, it will approach a threshold beyond which probable cause exists.

144 F.3d at 416 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). "Corroboration of a certain amount of information provided by an informant can be sufficient to establish probable cause to arrest and search a criminal suspect." Strickland, 144 F.3d at 417. The informant identified Strickland "as a potential source of cocaine" and told the police of "a conversation in which Strickland agreed to meet [the informant] at a certain time and place to sell him cocaine. . . . We

hold that, on these facts, the officers had probable cause to [arrest Strickland]." Id.

Like the deputies in Richardson, Layfield had information from a reliable confidential informant that the informant had bought prescription drugs from Neefe in the past. [3] Layfield knew that earlier that day the informant had spoken to Neefe and Neefe agreed to sell him valium and morphine. The informant identified Neefe's vehicle and registration number (confirmed through NCIC) and his residence. The informant called Neefe from TFC Skinner's car and Skinner heard the informant arrange with Neefe to meet at the Jiffy Lube to buy the drugs. Like the suspect in Richardson, Neefe "was under surveillance for [drug] trafficking, departed his residence identified by the confidential informant" immediately after the call from the informant to arrange the drug buy. 40 Fed.Appx. at p.12.

These facts, "given the 'factual and practical considerations of everyday life,' could lead a reasonable person to believe that an illegal act has occurred or is about to occur." Strickland, 144 F.3d at 416 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Layfield was able to corroborate sufficient information by the confidential informant "to establish probable cause to arrest and search a criminal suspect." Strickland, 144 F.3d at 417.

D. Layfield Is Entitled To Qualified Immunity From Suit.

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is

[3] Even though Layfield obtained his information from the confidential information through other members of the GRF, "[t]he collective knowledge of the investigating officers is measured in determining probable cause." United States v. Belle, 593 F.2d 487, 498 n.15 (3rd Cir. 1979).

dispositive. Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "'[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" Saucier, 533 U.S. at 200 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

Even if this Court concludes that Layfield did not have probable cause to arrest Neefe for a drug violation, the qualified immunity inquiry "has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, . . . will apply to the factual situation the officer confronts. . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Saucier, 533 U.S. at 205.

Layfield reasonably believed that, based on the facts presented to him, he had probable cause to arrest Neefe for selling prescription drugs. Layfield knew from a reliable confidential informant that he had bought drugs from Neefe in the past. The informant (in the presence of two officers) called Neefe to arrange to meet at the Jiffy Lube to buy valium and morphine. Shortly after that call, Neefe left the building which the informant had identified as Neefe's residence and got into the car the informant had correctly identified as Neefe's. Neefe then began driving north on Route One towards the Jiffy Lube. When Layfield spotted Neefe's car, he was headed in the direction of the appointed place for the drug buy. After Layfield stopped Neefe, Layfield asked what was in the orange bucket in the front seat of Neefe's car, and Neefe opened the top, revealing small plastic bottles which contained prescription drugs.

On the basis of these undisputed facts, if the Court determines that, as a matter of law, Layfield did not have probable cause to arrest Neefe for a drug violation, then the Court nevertheless should grant summary judgment in favor of Layfield on the basis of qualified immunity. At most, Layfield may have made a reasonable "mistake as to what the law requires" and therefore "is entitled to the immunity defense." Saucier, 533 U.S. at 205.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Defendants' Opening Brief, this Court should grant defendants' motion for summary judgment as a matter of law and dismiss plaintiff's complaint with prejudice.

Respectfully submitted,

/s/ W. Michael Tupman

W. Michael Tupman
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, DE 19904
(302) 739-7641

Attorney for Defendants

Dated: September 30, 2005

**CERTIFICATE OF SERVICE**

I certify that on September 30, 2005, I served electronically a copy of the Defendants' Reply Brief in Support of Their Motion for Summary Judgment, and caused to be served by first-class mail, postage prepaid, two copies of that Reply Brief to:

Edward C. Gill, Esquire
16 N. Bedford Street
P.O. Box 824
Georgetown, DE 19947
Counsel of Record for Plaintiff

/s/ W. Michael Tupman
W. Michael Tupman

I:\TUPMAN\FILES\neefe.sj.reply.brief.wpd